COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Athey and Callins
Argued at Virginia Beach, Virginia


CHIDOZIE VINCENT OPARA

                                                    MEMORANDUM OPINION* BY
v.        Record No. 1350-21-1                 JUDGE DOMINIQUE A. CALLINS
                                                      OCTOBER 25, 2022

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF CHESAPEAKE
Marjorie A. Taylor Arrington, Judge

Meghan Shapiro, Senior Assistant Public Defender (Virginia
Indigent Defense Commission, on briefs), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General; on brief), for appellee.


On November 5, 2021, the Circuit Court of the City of Chesapeake found that appellant,

Chidozie Opara, violated his probation for the fourth time.  The trial court revoked Opara's

previously suspended sentences, then totaling seven years and six months, and resuspended three

years and six months.  On appeal, Opara argues that the trial court erred in failing to apply Code

§ 19.2-306.1 and, alternatively, abused its discretion by imposing an active sentence.  We find that

Opara failed to preserve his Code § 19.2-306.1 argument.  We also find that the court did not err in

imposing an active sentence.

BACKGROUND

"On appeal of the revocation of a suspended sentence, the appellate court reviews the

evidence in the light most favorable to the Commonwealth, the party who prevailed below."

_____

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

*Jenkins v. Commonwealth*, 71 Va. App. 334, 339 n.2 (2019) (quoting *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013)). On June 24, 2002, the trial court sentenced Opara to twelve years of incarceration, with six years and ten months suspended, for possession of cocaine with the intent to distribute. On November 19, 2002, the trial court sentenced Opara to six years' incarceration, with four years and three months suspended, for two counts of forgery. Both sentencing orders placed him on supervised probation, to commence upon his release from confinement, and required him to comply with the terms of his probation.

Opara first violated his probation on January 7, 2009, after he was convicted of possession of heroin with the intent to distribute. The trial court revoked Opara's previously suspended sentences, then totaling ten years and thirteen months, and resuspended nine years. On March 11, 2014, Opara stipulated that he violated conditions one and two of the terms of his probation after he was convicted of possession of marijuana, driving with a suspended license, failure to wear a seatbelt, reckless driving, and failure to obey traffic signs between November 2011 and July 2013. The trial court revoked and resuspended the entirety of Opara's sentences. On November 30, 2017, Opara stipulated that he violated conditions six and eight of the terms of his probation after he failed to participate in substance abuse treatment and tested positive for marijuana, cocaine, and opiates. The trial court revoked both suspended sentences, then totaling nine years, and resuspended seven years and six months.

On August 23, 2021, Opara's probation officer filed a major violation report alleging that Opara violated condition eight of the terms of his probation, which prohibited the unlawful use, possession, or distribution of controlled substances. The trial court subsequently conducted a revocation hearing, during which the Commonwealth introduced evidence showing that Opara tested positive for cocaine, fentanyl, methadone, and opiates more than once between 2019 and 2021. The Commonwealth also introduced evidence that Opara had previously violated his

probation three times. Opara, represented by counsel, did not contest his positive drug test results or that they constituted his fourth probation violation. Instead, Opara testified that he "was struggling with [his] addiction" and asked the trial court to allow him to participate in a work therapy program through the Salvation Army. After hearing the parties' evidence and arguments, the trial court said that "[t]he Court doesn't specifically seek to punish you or sanction you. At this point [you have a problem] . . . more serious than the Salvation Army Program." The trial court also noted that, although it has the discretion to impose a short sentence, "[t]he benefit of sending you to the penitentiary is that you can avail yourself of a program there that can help you." The court noted that "I'm not sure what the wait list is [for the therapeutic program], what the time, what the backup is to know that he'll get into that either. So these are things that I'm weighing" before ultimately sentencing Opara to four years of active incarceration.

Opara stated during his allocution that "this is the first time that I've been violated, and I have been served the capias from Norfolk and Chesapeake, which I do have time in both cities because the new law says one act cannot constitute a subsequent violation in two jurisdictions." Opara further stated, "[i]f that didn't happen, I'm being processed under the new law, but it seems that the Commonwealth wants to sentence me under the old law." The trial court subsequently revoked Opara's previously suspended sentences, then totaling seven years and six months, and resuspended all but four years, with a recommendation for therapeutic community.

Opara's counsel moved to reconsider Opara's sentence "based on the worldwide pandemic caused by COVID-19." Attached to the motion was a letter from Opara who asked the trial court to reconsider his "unusual lengthy sentence for [a] technical violation, without any added charges." The trial court denied the motion on December 6, 2021. This appeal followed.

ANALYSIS

I. Opara did not preserve his Code § 19.2-306.1 argument.

On appeal, Opara argues that Code § 19.2-306.1 prohibited the trial court from sentencing him to an active sentence greater than fourteen days because his fourth probation violation constituted his second "technical" violation under the statute. Opara contends that his 2017 probation violation was his only previous "technical" violation and that his other previous probation violations do not constitute "technical" violations under Code § 19.2-306.1. Opara failed to preserve this argument for appeal.

Under Rule 5A:18, "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" *Maxwell v. Commonwealth*, 287 Va. 258, 264-65 (2014) (quoting *State Highway Comm'r v. Easley*, 215 Va. 197, 201 (1974)). To satisfy Rule 5A:18, an objection must "be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error." *Id.* at 265 (quoting *Scialdone v. Commonwealth*, 279 Va. 422, 437 (2010)). A party that fails to timely and specifically object waives his argument on appeal. *See Bethea v. Commonwealth*, 297 Va. 730, 743 (2019).

Opara contends that he preserved his argument based on his "arguments to the [c]ourt prior to imposing his sentence."[1] The record reflects, however, that Opara presented no

---

[1] Opara also cites to a letter to the trial court that he filed independent of his attorney to support his claim that he preserved his argument for appeal. The trial court, however, did not consider Opara's letter because it did not include a certificate of service and constituted an *ex parte* communication. As Opara's letter was neither presented to the trial court nor decided, it failed to preserve his argument for appeal. *See Amos v. Commonwealth*, 61 Va. App. 730, 745

argument as to the number or nature of his previous probation violations before the trial court's determination that he had violated his probation for the fourth time. Moreover, even if the argument made by Opara during his allocution was timely, it is markedly different from the one he now advances on appeal. During his allocution, Opara argued that his fourth probation violation was his "first" and vaguely argued that "one act cannot constitute a subsequent violation." This argument does not mention his previous probation violations or how such violations should be construed under Code § 19.2-306.1, and in fact denies the existence of such previous violations. "Procedural-default principles require that the argument asserted on appeal be the same as the contemporaneous argument at trial." *Bethea*, 297 Va. at 743. For these reasons, the arguments made by Opara during the revocation hearing were not timely and did not preserve the argument he advances on appeal.

Opara further claims that his motion to reconsider preserved his argument on appeal. In doing so, Opara specifically points to the letter attached to the motion which characterizes his sentence as an "unusual lengthy sentence for [a] technical violation." Opara's claim that his sentence was "unusual" not only failed to argue that his sentence was legally incorrect, but also failed to alert the trial court as to the nature of the argument he now advances on appeal. Indeed, his motion was expressly "based on the worldwide pandemic caused by COVID-19." Accordingly, Opara's motion to reconsider failed to preserve his argument. *See Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011) ("Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it.").

---

(2013) ("Where a party fails to obtain a ruling on a matter presented to a trial court, there is nothing for this Court to review on appeal.").

Although Opara did not preserve his argument for appeal, he insists that this Court should consider his argument under Rule 5A:18's ends of justice exception. "'The ends of justice exception is narrow and is to be used sparingly,' and [it] applies only in the extraordinary situation where a miscarriage of justice has occurred." *Holt v. Commonwealth*, 66 Va. App. 199, 209 (2016) (en banc) (quoting *Redman v. Commonwealth*, 25 Va. App. 215, 220 (1997)). "The burden of establishing a manifest injustice is a heavy one, and it rests with the appellant." *Id.* at 210 (quoting *Brittle v. Commonwealth*, 54 Va. App. 505, 514 (2009)). "In order to avail oneself of the exception, [the appellant] must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might* have occurred." *Id.* (quoting *Redman*, 25 Va. App. at 221).

Opara contends that the "trial court's error caused a grave injustice" because his "criminal sentence [is] over 100 times that permissible by law." In doing so, Opara conflates his underlying sentences, for which seven years and six months remained to be served at the time of the revocation hearing, with the trial court's revocation of his probation. "Probation is not part of a sentence, but rather an act of grace on the part of the circuit court conditioned upon a defendant's compliance with reasonable terms and conditions." *Garibaldi v. Commonwealth*, 71 Va. App. 64, 69 (2019). Accordingly, the mere revocation of Opara's probation does not establish a grave injustice warranting the application of Rule 5A:18's ends of justice exception. Opara's request that we consider his argument is therefore based on the merits of his appeal, which is not enough to warrant the application of the ends of justice exception. *See Winslow v. Commonwealth*, 62 Va. App. 539, 546 (2013) ("It is never enough for the [appellant] to merely assert a winning argument on the merits—for if that were enough procedural default 'would

never apply, except when it does not matter.'"). As a result, the ends of justice do not excuse Opara's procedural default.[2]

## II. The trial court did not err by imposing an active sentence.

Opara argues that the trial court abused its discretion by imposing a four-year active prison sentence for a minor violation. "In revocation appeals, the trial court's 'findings of fact and judgment will not be reversed unless there is a clear showing of abuse of discretion.'" *Jacobs*, 61 Va. App. at 535 (quoting *Davis v. Commonwealth*, 12 Va. App. 81, 86 (1991)). "The evidence is considered in the light most favorable to the Commonwealth, as the prevailing party below." *Id.*

After suspending a sentence, a trial court "may revoke the suspension of sentence for any cause the court deems sufficient that occurred at any time within the probation period, or within the period of suspension fixed by the court." Code § 19.2-306(A). "If the court, after hearing, finds good cause to believe that the defendant has violated the terms of suspension, then the court may revoke the suspension and impose a sentence in accordance with the provisions of § 19.2-306.1." Code § 19.2-306(C). "The court may again suspend all or any part of this sentence for a period up to the statutory maximum period for which the defendant might originally have been sentenced to be imprisoned, less any time already served, and may place the defendant upon terms and conditions or probation." *Id.*

---

[2] At oral argument, Opara argued for the first time that the trial court's order was *void ab initio* because it was outside the legislature's mandatory maximum sentence of fourteen days for a second technical probation violation. *See Fletcher v. Commonwealth*, 72 Va. App. 493, 511 *(2020)* ("[A] sentence imposed in violation of a prescribed statutory range of punishment is void *ab initio*[.]" (quoting *Rawls v. Commonwealth*, 278 Va. 213, 221 (2009))). But because Opara did not contest the trial court's determination that this was his fourth probation violation, he is bound by that finding on appeal. *See Stacey v. Commonwealth*, 73 Va. App. 85, 94 (2021) (noting that unpreserved errors become the law of the case). Thus, the trial court validly sentenced Opara within his original sentence, as permitted by Code § 19.2-306.1(C).

The record shows that Opara violated the terms of his probation during the suspension period. Thus, it was within the trial court's discretion to "impose or resuspend any or all" of the suspended sentences. *Id.*

It was fully within the trial court's purview to weigh any mitigating factors Opara presented. *See Keselica v. Commonwealth*, 34 Va. App. 31, 36 (2000). Although Opara presented a Salvation Army work therapy program as an alternative to incarceration, the trial court found that the program was not adequate in this case. And although Opara has participated in the DOC program without success, that did not preclude the trial court's determination that Opara could benefit from the DOC program now. Similarly, the time it takes for the program to be available to Opara was a factor that the court properly considered. Opara has struggled with drug addiction in the past and he has struggled to receive help in the community, all facts that weighed against community treatment. At the close of trial, the court found that Opara should be given a four-year active sentence with a recommendation for the therapeutic community. Given the evidence available to the trial court, we cannot say that was an abuse of discretion.

## CONCLUSION

Opara did not preserve the argument he advances on appeal and the ends of justice do not excuse his procedural default. The trial court did not err by imposing a four-year active sentence. For these reasons, the trial court's judgment is affirmed.

*Affirmed*.